THE AGRICULTURAL INSURANCE COMPANY *vs.* GEORGE I. KEELER AND ANOTHER.

A joint bond was executed by *R* and *K*, conditioned that *R* should pay over all funds coming into his hands as agent of an insurance company. In a suit on the bond against both obligors, to which *K* alone made defence, *R* appearing by attorney and consenting to judgment, it was held that the books of *R*, showing the receipt of moneys for the company, kept by him in the regular course of his agency, were admissible against *K*.

And held that it did not alter the case that by the books *R* stood charged with certain sums not actually received and for which he might not ultimately be liable, as this fact went to the weight of the evidence not to its admissibility.

DEBT on a bond; brought to the Superior Court in Fairfield County, and tried to the court on a general denial, before *Beardsley, J.* Judgment for the plaintiffs and motion for a new trial by the defendant Keeler, for error in the admission of evidence. The case is fully stated in the opinion.

*L. Warner*, in support of the motion.

*H. S. Sanford*, contra.

FOSTER, J. This is an action of debt on a joint and several bond. In the penal part of the instrument no distinction is made between the obligors; each appears to be a principal. The condition of the bond however plainly shows that the obligations incurred were on account of Raymond only, and that if Keeler should be held liable to the obligees he would have his remedy over against Raymond. Raymond must therefore be considered the principal and Keeler the surety.

On the 23d of May, 1871, the plaintiffs appointed Raymond their agent to take applications for policies of insurance, and to collect and remit to them the premiums due on the same. Raymond accepted the appointment, and in consideration thereof, and of the profit to be derived therefrom, he, with Keeler, made and delivered to the plaintiffs the bond, with the condition annexed, on which this suit is brought.

In the condition of this bond it was stipulated that Raymond should faithfully perform the various duties of an agent

of the insurance company according to the requirements of the charter, by-laws, &c., of the company. Among other specified duties it was provided that he should, at all times, upon the request of the company, pay and deliver over to them all moneys, record-books, papers, or other property belonging to them which should come into his hands as such agent, and should pay at maturity any and all bonds, mortgages, notes, due-bills, checks, or other evidences of debt, which he might give to the company on account of any indebtedness to them. It was for the non-fulfilment of the stipulation to pay over the money belonging to them, and to recover the amount claimed by them to have been in the hands of Raymond as their agent, when his agency terminated, April 16th, 1872, that this suit was brought.

The single question raised on this motion is, whether the books of Raymond, kept by him, of said agency business, which books he delivered to the proper officer of the company as and for the books of his agency, were admissible in evidence against Keeler, to prove that any money, and if any, what amount, came into the hands of Raymond as agent, which was not by him paid over to the company.

No doubt can exist but that these books were evidence against Raymond, as they are admissions against the interest of the party making them. As a general rule the admissions of one of two joint-obligors is admissible against his co-obligor in a suit on their joint obligation. Such is the character of the present action, though Keeler is the surety and Raymond the principal.

But the defendant Keeler claims, and the motion discloses, that these books were not kept for the sole purpose of showing the moneys actually received by Raymond, but that by them he stands charged with other sums, not received, due for premiums on policies issued on credit. The company permitted Raymond to give credit to persons taking out policies through his agency, according to his reasonable discretion. If any policy was returned and cancelled within four months from its issue, the premium being unpaid, Raymond was credited with the amount of the unpaid premium, if the company

were satisfied that he was not in fault. All other premiums were to be accounted for by Raymond as cash. There was no evidence that Keeler knew of this practice.

The force of the objection to the admissibility of these books in evidence seems to lie in the fact that they might show Raymond to be indebted to the company over and above the amount of money which actually came to his hands, and thus subject Keeler beyond the stipulations in the condition of his bond. But this objection is rather to the effect of the evidence than to its admissibility. The evidence derived from the books, very clearly, was not conclusive; it was subject to explanation, correction and contradiction. It was the duty of the court below, which duty we must take to have been faithfully performed, to ascertain the amount of money which belonged to the company that actually came into the hands of Raymond, and was not by him paid over to the company, and for that sum, and that sum only, to render judgment for the plaintiffs.

The main question however still recurs; were these books admissible in evidence? Raymond, it appears by the record, was not personally in court, but appeared by attorney, and offered to allow judgment to be entered against him for the amount of the plaintiffs' claim. Keeler alone made defence to the action.

Raymond, in performing his duties as a faithful agent, to which performance the defendants were jointly bound, must necessarily have kept books in which his transactions on account of the company, the issuing of policies, and the receipt of premiums, would be duly entered. That these entries were made during the transaction of the business for which the surety was bound, was apparent from the fact that they corresponded with the monthly statements rendered by Raymond to the company during the continuance of his agency. The provisions of the bond required these statements to be rendered. Mr. Greenleaf says:—"In the cases on this subject—the admissions of a principal as evidence in an action against the surety, the main inquiry has been whether the declarations of the principal were made during

the transaction of the business for which the surety was bound, so as to become a part of the *res gestæ*. If so, they have been held admissible, otherwise not. * * * So if one become surety on a bond conditioned for the faithful conduct of another as clerk or collector, it is held that in an action on the bond against the surety, confessions of embezzlement made by the principal after his dismissal are not admissible in evidence, though with regard to entries made in the course of his duty it is otherwise." 1 Greenlf. Ev., § 187. Among the cases cited in support of this doctrine which are most analogous to the case at bar, are the cases of *Goss* v. *Watlington*, 3 Brod. & Bing., 132, *Middleton* v. *Melton*, 10 Barn. & Cress., 317, and *Whitnash et al.* v. *George et al.*, 8 Barn. & Cress., 556. *Goss* v. *Watlington* and *Middleton* v. *Melton* were actions against sureties on penal bonds conditioned for the faithful performance of the duties of the principal, a collector of taxes. In *Goss* v. *Watlington* it was held, that entries made by the collector in a public book, handed down to him by his predecessor in office, and afterward delivered to his successor, were evidence against the surety. Dallas, C. J., said: "It is clear that the defendant's obligation is, among other things, for the due delivery of these books which are referred to in the condition of the bond, * * * and thereby [the books] become evidence against him." *Middleton* v. *Melton* went even farther. It was there held that an entry made by a collector of taxes in a private book kept by him for his own convenience, whereby he charged himself with the receipt of sums of money, was evidence against the surety of the fact of the receipt of such money, in an action on a bond conditioned for the due payment of the taxes by the collector. And this upon the general principle that the entry was to the prejudice of the party who made it. *Whitnash* v. *George* was an action on a bond given to bankers, conditioned for the fidelity of a clerk. It was there held that entries made by him of the receipt of sums of money, in books kept by him in the discharge of his duty as clerk, were evidence against his sureties of the fact of the receipt of the money. These entries were admissible, said Lord Tenterden,

"not altogether as declarations made by him against his interest, but because the entries were made by him in those accounts which it was his duty as clerk to keep, and which the defendants had contracted that he should faithfully keep."

It should be remarked, however, that in each of these cases the principal in the bond was dead, and the action was brought against the sureties alone. Mr. Greenleaf lays no stress on this fact of the death of the principal; indeed he makes no allusion to it, and without an examination of the cases quoted by him in support of the doctrine laid down in the text, the fact would not appear. But Mr. Pitman, in treating on this subject, quotes these same cases, and recognizes the law to be that entries made by the principal, acknowledging the receipt of moneys, under such circumstances as are detailed in those cases, were, after the principal's death, admissible in evidence in an action against the surety. He then says: " But the admissions of the principal are not, while he is alive, sufficient to charge the surety, the evidence not being the best the case is capable of affording." Pitman on Prin. & Surety, 229. The principal cases quoted are *Evans* v. *Beattie*, 5 Esp., 26, *Bacon* v. *Chesney*, 1 Stark., 192, *Hart* v. *Horn*, 2 Camp., 92, and *Ward* v. *Suffield*, 5 Bing. N. C., 381. *Evans* v. *Beattie* and *Bacon* v. *Chesney* were actions of assumpsit against a guarantor for goods sold and delivered to a third person. The declarations of that person, the purchaser of the goods, were held inadmissible to charge the guarantor. *Hart* v. *Horn* was an action of replevin, and it was ruled that the declarations of the landlord were inadmissible for the defendant to disprove the tenancy. In *Ward* v. *Suffield* the defendant, in consideration that the plaintiff would employ one Henry New as his agent for the sale of certain property, and also to collect his debts, agreed to be responsible for all sums which New might receive, not exceeding a specified amount. The admissions of New as to the amount due the plaintiff were offered in evidence and received on the trial at nisi prius, and the plaintiff had a verdict. The Court of Common Pleas refused to set the verdict aside, holding that the evidence, under the circumstances of the case,

was properly received. Tindal, C. J., in his judgment however said: "It is true that when the principal debtor is alive, his declarations are not evidence against his surety."

Two of these cases, it will be noticed, are but nisi prius authorities, and as to one of them, *Evans* v. *Beattie*, Mr. Justice Johnson, in giving the opinion of the Supreme Court of the United States in *Drummond* v. *Prestman*, 12 Wheat., 515, says: "This case is loosely reported, and attributes some observations to Lord Ellenborough which we doubt much the authenticity of." Manifestly however there is a broad distinction betweeen those cases where the proceeding is against the guarantor on a collateral liability, and the case at bar, where the principal and surety are jointly bound, and where they are together sued on their joint liability.

The case of *Perchard & Hamerton, Sheriffs of London*, v. *Tyndall*, 1 Esp., 394, was an action of debt on bond. The condition of the bond was for the faithful performance of covenants in an indenture between the plaintiffs and one Hyndes, an officer of the sheriff, the material one of which was for the payment of all levy-money made by him. The plaintiffs claimed that Hyndes, the bailiff, had received £153 15s. levy-money, which he had not paid over. On this issue was taken. To prove the receipt of the money the plaintiffs offered an indorsement on a warrant, made by Hyndes, acknowledging the receipt. For the defendant it was objected that to prove this fact Hyndes himself ought to be called. The report then states: "But this was overruled by Lord Kenyon, as in fact Hyndes himself was the defendant in the action."

In *Drummond* v. *Prestman*, 12 Wheat., 515, which was an action on a guaranty, it was held that the record of a judgment confessed by the principal for the amount of the debt due the plaintiff, was admissible in evidence, *inter alia*, to charge the guarantor. In the case at bar no judgment had been had against the principal, but the record shows, as we have already stated, that the principal appeared by attorney, and offered to allow judgment to be rendered against him for the amount claimed.

Upon the whole case we have no doubt that the books were properly received in evidence, and we think therefore that the motion for a new trial should be denied.

In this opinion the other judges concurred.