EMMA L. HILLYER *vs.* JACOB F. REMORE, Sheriff, and others.

January 3, 1890.

**Exemption—Milliner's Stock in Trade.**—Although the owner of a stock of millinery and fancy goods purchased from wholesale dealers is a milliner by trade, and a large share of her business consists in making up and finishing articles selected by her customers from said stock, the same cannot be declared exempt, as "stock in trade," to the amount of $400 in value, under the provisions of Gen. St. 1878, c. 66, § 310, subd. 8, as amended by Laws 1881, c. 25, § 1, when the articles composing said stock are kept indiscriminately for sale, or for manufacture, as opportunity affords, in the condition in which they were bought, and are treated by their owner as merchandise.

**Same—Articles Manufactured by Owner.**—But articles manufactured in whole or in part by said owner are exempted from seizure and sale by the express terms of the law, and it is of no consequence that said articles have been placed on sale with the non-exempt property by the manufacturer.

Appeal by defendants from an order of the district court for Lyon county, *Webber,* J., presiding, refusing a new trial on plaintiff remitting $36 from the verdict in her favor, thereby reducing it to $217.71.

*J. M. Thompson,* for appellant.

*V. B. Seward,* for respondent.

COLLINS, J. To determine this appeal, we are required to construe the statute which exempts from seizure on attachment, or sale upon final process, "the tools and instruments of any mechanic, miner, or other person used and kept for the purpose of carrying on his trade, and, in addition thereto, stock in trade, including articles or goods manufactured in whole or in part by him, not exceeding four

hundred dollars in value." Gen. St. 1878, *c.* 66, § 310, subd. 8, as amended by Laws 1881, *c.* 25, § 1. The plaintiff was in the millinery and fancy goods business, and the greater part of her stock had been purchased from the wholesale dealers. A small portion had been manufactured or "made up" by plaintiff out of materials also bought at wholesale and carried in stock until used. All of the goods were on sale as merchandise, although the larger share of the business consisted in selling articles which had been purchased in an incomplete condition, with materials for finishing the same, and completed by putting them together. Defendant Remore, as sheriff, seized and sold the stock upon an execution issued at the instance of the other defendants, who, as creditors, held a judgment against plaintiff. Thereupon she brought this action to recover their value, claiming them as exempt under the statute above quoted.

Under a statute precisely like that under discussion, except the words "including articles or goods manufactured in whole or in part by him," which words first appeared in the amendment of 1881, it was held by this court, more than 30 years ago, that this special subdivision of the exemption law was intended to comprehend only that class of citizens who earn their livelihood by the use of tools and instruments in whole or in part, and that a merchant did not fall within the terms of the first clause, which exempted tools and instruments, nor within the terms of the second, which exempted stock in trade of a certain value. *Grimes* v. *Bryne,* 2 Minn. 72, (89.) The correctness of this decision has never been questioned in this state. Upon the other hand, it has been acquiesced in and approved. Later (1880) it was declared that the words "stock in trade" referred to a stock of materials which the owner of the tools had provided and held for the purpose of enabling him to make their use a beneficial or profitable one, as a means of support. The words included all materials obtained and held for such purpose, in whatever condition or state of preparation for use they might be, if suitable and adapted to the end in view, and to the particular business in which the owner was engaged, wherein the use of such tools was necessary. The particular property involved, held to be exempt as stock in trade, were unfinished burial cases and caskets, which had been bought

and were held for the sole purpose of finishing and fitting them for use. *McAbe* v. *Thompson*, 27 Minn. 134, (6 N. W. Rep. 479.) Still later (1886) we have the brief statement that in order that stock in trade may be exempt the owner must be engaged, or about to engage, in the manufacturing or other business in which such stock is, or is about to be, used; the article in controversy being leaf tobacco. *Prosser* v. *Hartley*, 35 Minn. 340, (29 N. W. Rep. 156.)

In the case at bar, it must be conceded that all of the goods seized were in the market for sale in the usual course of such business. While the plaintiff stood ready, as a mechanic, to complete such as needed completion, she made a practice of selling her wares just as they came from the manufacturers. If a customer chose to buy an unfinished article, with or without the materials for finishing, the sale was so made, and the services of the plaintiff, with her tools of trade, dispensed with. A large proportion of the different articles kept in stock, such as velvets, ribbons, flowers, feathers, and other ornaments, were complete in themselves, and the plaintiff's connection therewith frequently ended when she measured off the yards, or counted out the number, of the article called for, as the case might be. All of her goods were kept together, and very few articles, if any, were purchased or held for the sole and exclusive purpose of fitting and finishing for sale. If this entire stock can be declared exempt under the law, that of a merchant tailor, who makes up clothing from a stock of materials kept for sale by the yard, piece, or pattern, or that of a shoemaker, who, in addition to using his stock in a repairing and manufacturing department, makes a practice of retailing leather by the pound or piece, must also be held beyond the reach of an execution, if of no greater value than $400. The law must not be construed so as to include those who are, in fact, merchants, in that class of persons for whom it was designed, even in cases where there may be, almost of necessity, a mechanical and manufacturing department in close relationship with the business of merchandising. The scope and design of this statute has been made the more apparent by the amendment of 1881. It was undoubtedly supposed by the legislators that manufactured articles, the product of the handicraft of the "mechanic, miner, or other person," were not in-

cluded in the term "stock in trade;" that the exemption ceased when the materials changed in form. The purpose of the amendment was to confer upon the producer the full benefit of an exemption which clearly existed until his wares were fitted for market, and then became uncertain; to secure to him, beyond question, the right and opportunity to sell in the usual way. It was superfluous legislation, if the law, as it then stood, contemplated or authorized one who claimed its benefits to treat his exempt stock as so much merchandise,—buying, selling, and dealing in the customary manner of a merchant. We are of the opinion, especially in view of the amendment, that a large part of plaintiff's goods—such articles as were purchased from the wholesale dealers, kept indiscriminately.for sale or for manufacturing, as the opportunity came, in the condition in which they were bought—were not "stock in trade," within the meaning of the statute. As to these goods, plaintiff must be deemed a merchant; a person engaged in trafficking; one who bought goods and sold the same as merchandise. Of course, we must not be understood as saying that a single or occasional sale of material would render the owner's stock, otherwise exempt, liable to seizure upon execution. It is sufficient to state that the debtor must not be a "merchant," within the. ordinary signification .of the word.

Some of the articles for which the plaintiff claims to recover were made up or finished by her, and were exempt. The mere fact that upon completion they were placed on sale with other property, which we hold non-exempt, cannot be regarded as of any consequence, and plaintiff is entitled to recover their value.

Order reversed.