SUSAN T. WILLIAMS AND SAMUEL T. WILLIAMS, APPELLANTS, VS. GEORGE A. CROCKER, APPELLEE.

ASSIGNMENT FOR BENEFIT OF CREDITORS—IMPEACHMENT OF AT LAW THROUGH THE PROCESS OF GARNISHMENT OF THE ASSIGNEE — PARTIAL ASSIGNMENTS AND PREFERMENT OF CREDITORS FORBIDDEN — ASSIGNMENT LAW MANDATORY — COPARTNERSHIP ASSIGNMENT.

1. The provision of the assignment law, Chapter 3891, acts of 1889, requiring the assignor to make oath to the effect that he had.

placed in the hands of his assignee *all* of his property of all kinds whatsoever, was *mandatory*, and a failure to make such oath rendered an assignment inoperative and void.

2. The practice is well-established that the validity of a deed of assignment, made for the benefit of creditors, and alleged to be fraudulent or void, may be tested and tried in a court of law upon an issue made between a creditor and the assignee summoned as garnishee under the provisions of law relating to garnishments; and, in the trial of such issue, if the assignment is found to be fraudulent, ineffectual or void, the garnisheeing creditor should recover against the assignee the amount found in his hand under such void assignment at the time of the service of the writ up to the extent of such creditor's claim.

3. The evident purpose of said assignment law, Chapter 3891, was to prohibit *partial* assignments for the benefit of creditors in this State, and to prohibit therein the *preferment* of one creditor over another. Where a deed of assignment made by a firm of copartners for the benefit of their creditors conveyed to the assignee nothing but the joint property of the firm, without including also the property of the individuals composing the firm, it was a *partial* assignment only, and void under this statute requiring a conveyance of *all* the debtors' property.

Appeal from the Circuit Court for St. Johns county.

The facts in the case are stated in the opinion of the court.

*W. A. McWilliams* and *M. C. Jordan*, for Apellants.

BRIEF OF COUNSEL FOR APPELLANTS.

This is a common law action of assumpsit against the appellees (defendants in the court below). After suit was instituted a writ of garnishment was sued out against appellee George A. Crocker, individually, and as the assignee of the appellees.

The appellees made an assignment of their partnership property to appellee George A. Crocker (garnishee defendant in the court below), who in response to the writ of garnishment answered that he had no property

or effects in his possession, custody or control of the appellees, which answer the appellants traversed.

The case was submitted to the court below on an agreed statement of facts, upon which the court rendered judgment for appellees.

Among other things stipulated in said agreed statement of facts, it was agreed by counsel for all of the appellees:

"That the said George A. Crocker by virtue of the said articles of assignment obtained property of the present value of about $1500.00. That at the time of the execution of exhibit 'A' (article of assignment) each of said partners owned and possessed individual property, aside from partnership property and were indebted to divers persons."

It will be readily seen that said appellees, in making their assignment to appellee Crocker, assigned only partnership property, which we claim, under our statute, renders the said assignment null and void. Our statute (Chapter 3891, sec. 1, page 131, acts of 1889) says:

"That no assignment made for the benefit of creditors shall be valid in this State, except the same shall be in writing, and shall provide for an equal distribution of all the assignor's real, mixed and personal property, except such as is exempted by law from forced sale.

It is admitted by appellees that they have not done so, which we claim vitiates said assignment. All the courts passing upon this point and construing statutory provisions similar to ours, have so held.

The counsel for appellees in the court below cited the following case of "McFarland vs. Bate, 25 Pacific Reporter, p. 238 (Kan.);" in this case the court held: "That under the law of Kansas an assignment by a

firm of the partnership estate for the benefit of their creditors, without reservations, preferences, or stipulations exacting releases from participating creditors, which is valid in other respects, will not be rendered void, because the individual property of the partners is not included in the assignment."

It will readily be seen that the above decision is in strict conformity to the Kansas statute, and has no bearing on the question before this court, as assignments in this State are entirely governed by statutory requirements.

Our statute prohibits partial assignments, and in the case cited had the statute passed upon by the court contained similar provisions to our own, it is clear that the Kansas court would have decided according to the view herein contended for by counsel for appellants, since that court, in its opinion, uses the following significant language:

"We are cited to several cases holding against the validity of partial assignments, but these authorities are based on statutes requiring that all the property or estate of the debtor shall be conveyed, or where one of the conditions of the deed making a partial assignment was that the creditors accepting its terms should give releases in full of their debts. It may now be considered to be established by the weight of authority that a partial assignment, which exacts releases from accepting creditors, and deprives them from access from the residue is not assigned, is invalid. In this case, however, no releases were required, no preferences given, nor any reservations made, and our statutes do not prohibit partial assignments; and hence the cases cited do not apply here. Although our statute relating to assignments requires that such property as is conveyed shall be for the benefit of all the

creditors of the assignor in proportion to their respective claims, it does not require that all the estate of the debtor shall be assigned. Gen. Stat. 1889, par. 342. The legislative purpose is further indicated in the subsequent paragreph of the act, wherein it is provided that only an inventory of the property assigned shall be filed, and not an inventory of all the debtor's estate; and also that the affidavit attached to the inventory shall likewise be limited."

Counsel for appellees in the court below also quoted the case "In re Gordon, 3 N. Y. Supp. 589, which goes directly to support our position; in that case the court said:

"That in the absence of statutory requirements an assignment of part of a person's property for the benefit of part of his creditors, is valid."

In the case at bar, the appellees assigned part of their property for the benefit of part of their creditors, whereas our statute clearly requires them to assign all their property, real, personal and mixed, to be equally distributed among all their creditors, in order to make the assignment valid, and further our statute requires the assignor to make affidavit that he has assigned all of his property of every description, except such as may be exempt.

A case directly in point has been decided by the Minnesota Supreme Court. The statute in that State being similar to ours, and the court there held: "That an assignment by partners of partnership property without assigning their individual property, is void." In re Allen's Estate, 41 Minn. 430, Still vs. Focke, 66 Texas, 715.

Says the Supreme Court of Texas, in Still vs. Focke, 66 Texas, 715:

"The property of the partnership and the property of each member of it which is subject to forced sale, must pass by the assignment."

Under our statute no creditor has any preference over any other creditor. It will be seen by reference to the articles of assignment that no provision is therein contained that after the payment of the partnership creditors, the remainder, if any, shall be applied to the payment of the individual creditors of the partners. This of itself would render said assignment void, if it was valid in all other respects.

And the same can be said of the partnership creditors. They are entitled to collect their debts out of the individual property of the partners, after the individual creditors of the partners are satisfied.

"Creditors have an equitable claim on all the property of their debtor, and it is his duty as well as his right to devote the whole of it to the satisfaction of their claims." Marshal, C. J. in Bradshaw vs. West, 7 Pet. (U. S.) 608. See also Griffin vs. Orman 19 Fla. 22.

But there is another invalid aspect to this assignment, since, under our statute, the discharge provision would preclude the partnership creditors from asserting any right to subject individual property for the payment of partnership debts after individual debts have been paid.

It will appear from the record that an attempt was subsequently made by appellees Gibbs and Hopkins, to cure the said invalid assignment, by making individual assignments; if all the partners had done this it would not have legalized the said invalid assignment, much less could it have this effect, when only two of the firm assign their individual property, and the other

partner Livingston retains his individual property and does not make an assignment of it.

In many cases it has been held: "That statutes governing assignments are mandatory." Hill, Fontaine & Co. vs. Alexander Bros. 16 Lea, 496; Goggins vs. Stephens & Co. 73 Ga. 414; Mather vs. McMillan, 60 Wis. 546; Hays vs. Covington, 16 La. 267.

In the following cases it has been held that where partners withheld material portions of their estate, from the operations of the deed of assignment, renders the assignment void." Citizens F. M. & L. Ins. Co. vs. Wallis, [23 Md. 183; Fullan vs. Abrahams, 29 Kan. 725; Thompson vs. Winona Harvester Works, 41 Minn. 434; Re Allen's Estate, Id. 430; Probst vs. Weldon, 46 Ark. 405; Gadsden vs. Carson, 9 Rich. Eq. 252, 70 Am. Dec. 207.

"To constitute a valid assignment debtor's estate must be administered and distributed substantially in conformity with the provisions of the statute." Milligan vs. O'Conner, 19 Ill. App. 487.

"Failure to comply with statutory requirements is cause for setting aside assignments." McMillan vs. Knapp, Am. St. Rep. 2 Vol. p. 29.

Argument further we deem presumptious, as it is clearly manifest, that assignments, when regulated by statute, must conform strictly to all statutory requirements."

It has been admitted in this case that this has not been done, and the assignment is void on its face.

The judgment should therefore be reversed and the cause remanded, and etc.

No Appearance for Appellee.

TAYLOR, J.:

In the year 1890 the appellants herein as plaintiffs below sued George W. Gibbs, Charles F. Hopkins, Jr. and Theodore H. Livingston, as copartners doing business under the firm name of The St. Johns County Savings Bank and Real Estate Exchange, in assumpsit for a recovery of a money deposit made with said firm, and on January 30th, 1891, recovered final judgment against said firm upon a default for $220.91. Pending the said suit the plaintiffs therein sued out a writ of garnishment and caused the same to be served upon the appellee herein, George A. Crocker, requiring him, in the usual form of such writs, to set forth upon oath what goods and chattels, rights and credits, money or effects were in his hands, custody or control, at the time of the service of such writ or since, belonging to the said defendant firm, and in what sum he was indebted to them. To this writ the garnishee answered, denying that he was indebted to the said firm, or to any of its members, in any sum, and denying that he had in his hands, custody or control any of their property. To this answer of the garnishee the plaintiffs interposed a traverse, and the issue thus joined was submitted to the court for its decision, a jury being waived, by consent and agreement of the parties in writing, upon the following agreed state of facts: 1. The said Susan T. Williams, in a joint action with the said Samiel T. Williams, her husband, against the said George W. Gibbs, Charles F. Hopkins, Jr., and Theodore H. Livingston, partners, doing a private banking business under the firm name and style of the St. Johns County Savings Bank, has recovered judgment in this court against the said defendants in the sum of $213.18 damages, and $7.73 costs of suit, on the

30th day of January, A. D. 1891, and at the time of the commencement of said suit, to-wit: the 6th day of November, A. D. 1890, sued out a summons of garnishment to the said George A. Crocker, assignee of the said defendants and individually. 2. The said garnishee has filed his answer, and the same has been traversed. 3. The articles of assignment under which the said garnishee obtained control and custody and possession of the property of the said defendants are hereto annexed as exhibits A, B and C. 4. That the said George A. Crocker by virtue of said articles obtained property of the said defendants of the present value of about $1,500. That at the time of the execution of exhibit A, said partners owned and possessed individual property aside from said partnership property, and were indebted individually to divers persons. 5. If the court shall adjudge the said papers purporting to be articles of assignment to be void, then these plaintiffs are entitled to judgment against said Crocker, defendant garnishee, and the court may enter up judgment accordingly, subject to such rights of review, appeal, etc., as the respective parties would have if the case had been tried by a jury. 6. The said garnishee has filed the bond, and the assignors the affidavit, as in their belief is required by Chapter 3891 of the laws of Florida, the sufficiency of which the court may pass upon.

The exhibits A, B and C, referred to the court as part of the above agreed statement of fact, with the schedules and affidavits thereto, are as follows:

EXHIBIT A.

George W. Gibbs *et al.*, Copartners, to George A. Crocker.

Assignment for the Benefit of Creditors.

This indenture, made this 31st day of October, A. D. 1890, by and between George W. Gibbs, Charles F. Hopkins, Jr., and Theodore H. Livingston, the two former of St. Johns county, Fla., and the latter of Duval county, Fla., as copartners under the firm and style of the St. Johns County Savings Bank, of the first part, and George A. Crocker, of St. Johns county aforesaid, of the second part, witnesseth: That whereas the aforesaid copartnership firm has become embarrassed, and is no longer able to pay its debt in full, but is desirous of having its property applied ratably to the payment of its debts so far as such property will pay the same: Now, in consideration of the premises, and of one dollar to them in hand paid by the party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby confessed, the parties of the first part have granted, bargained, sold, conveyed, assigned, transferred and set over, and by these presents do grant, bargain, sell, convey, assign, transfer and set over unto the party of the second part the following described property, to-wit: All the property, both real and personal property, interests, goods, wares, merchandise, credits and things in action, whether legal or equitable, and all the estate of every kind and description whatsoever of the said copartnership firm, the St. Johns County Savings Bank, to have and to hold the same and each and every part thereof to him, his heirs and assigns in trust, nevertheless, to and for the uses and purposes following, to-wit: to ask, demand, receive and sue for and collect, at law or otherwise, in the same manner

as parties of the first part might or could do in their own right. All debts, dues, claims and demands held or owned by said copartnership firm, against any and all persons or corporations whatsoever, to proceed to dispose of all the property of the said copartnership firm to the best interest of all parties concerned, either at public or private sale, as to him may seem best, and convert the same into money, and to pay and apply the moneys of said firm on hand at the date hereof, and the moneys so collected and received as aforesaid, in the manner following, to-wit: to pay, firstly, the reasonable cost and expense of executing the assignment herein and hereby made, and carrying out the trust herein created; secondly, to pay, out of any sum remaining, all debts owing by said copartnership firm in full, whether the same be due or not. And if there shall not be sufficient moneys to pay all such debts in full, then to apply such moneys in payment of such debts equally and ratably in proportion to the respective amounts thereof; and, thirdly, if after paying all the debts and liabilities of said copartnership firm in full, there shall be left any residue of the moneys aforesaid, then to pay such residue in equal and ratable proportions to the parties of the first part hereto, their heirs and assigns; provided, nevertheless, that the party of the second part shall not proceed to dispose of the property hereby assigned, or to collect the debts due to said copartnership firm, or pay out to the creditors of said firm any moneys on hand at the date hereof until he shall have given and filed the bond required in and by section 4 of Chapter 3891 of the laws of Florida. And shall have given notice by publication to the creditors of said firm, and by mail, as required in and by section 6 of Chapter 3891 aforesaid. A schedule of property of said firm, so far as

now known, is hereby annexed, marked "Ex. A," and made part hereof. In consideration of the premises, the party of the second part accepts the trust herein reposed in him, and covenants and agrees that he will perform and discharge the duties of assignee herein imposed upon him as herein prescribed and according to law, to the best of his ability. In witness whereof the parties hereto have hereunto set their hands and affixed their seals the day and year first above written.

THE ST. JOHNS CO. SAVINGS BANK, Seal.
GEO. W. GIBBS, Seal.
CHAS. F. HOPKINS, JR., Seal.
THEODORE H. LIVINGSTON, Seal.
GEORGE A. CROCKER, Seal.

Signed, sealed and delivered in presence of us:
And we certify "in the same manner as parties of the first might or could do in their own right," interlining page 2, line 8, before execution. Also 23 words referring to Ex. A, interlined page 3 before execution; also "able," page 1, line 13, and Savings, page 1, line 8, and page 2, line 3, inserted before execution.

B. C. RUDE,
HENRY GAILLARD.

STATE OF FLORIDA, } ss.
ST. JOHNS COUNTY. }

On this 21st day of October, A. D. 1890, before me personally came George W. Gibbs, Charles F. Hopkins, Jr., Theodore H. Livingston and George A. Crocker, to me well known, and known to be the same persons described in and who executed the foregoing assignment for the benefit of creditors and acceptance thereof, and duly and severally acknowledged that

they executed the same.    Witness my hand and official seal the day and year last above written.

HENRY GAILLARD,

Seal.                              Notary Public.

Ex. A.

Referred to in the annexed assignment.    A statement and schedule of the property and assets of the St. Johns County Savings Bank:

Cash and cash items on hand................$  517.83

Notes, bills and claims against divers persons of doubtful or in value, nominal value $261.-05, actual value........................     000.00

Notes at U. S. Bank in New York $4,100, deposited as collateral for a debt of $3,500. Amount available as assets for payment of debts...................................     600.00

Notes secured by mortgages $4700 of nominal value, deduct $200 for insufficient securities, and makers insolvent, leaves as assets available for debts........................... 4,500.00

Good notes and claims unsecured............     312.00

Furniture in Bank..........................      75.00

Safe in bank, value $500, subject to a mortgage of $300, leaves available as assets to pay debts...................................     200.00

Notes of divers persons, utterly worthless, nominal value $500, estimated value, actual     000.00

Add 2 lots in Buena Esparranza, St. Augustine, held on contract of purchase by T. H. Livingston for the St. Johns County Savings Bank, subject to unpaid purchase price....     600.00

Total....................................$6,803.00

ST. JOHNS CO. SAVIFGS BANK.
GEORGE W. GIBBS,
CHARLES F. HOPKINS, Jr.,
THEODORE H. LIVINGSTON.

EXHIBIT B.

Charles F. Hopkins, Jr., &rbrace; Assignment.
to
George A. Crocker.

This indenture made this 8th day of November, A. D. 1890, by and between Charles F. Hopkins, Jr., of St. Johns county, State of Florida, party of the first part, and George A. Crocker, of the same county, party of the second part. Witnesseth: That whereas the party of the first part has become financially embarrassed and unable to pay his debts in full, or as they may become due, but is desirous of having his property applied to the payment of his said debts ratably in proportion to the several amounts thereof; and whereas said party of the first part is also a member of the copartnership firm known as the St. Johns County Savings Bank, which becoming likewise insolvent, has made an assignment to said George A. Crocker for the benefit of copartnership creditors, and it is probable that the copartnership assets will not suffice to pay the firm debts in full, thus leaving a deficiency for which any residue of first party's estate left after paying his individual debts would be liable, and first party is desirous of having any such residue applied in liquidating any such deficiency: Now, in consideration of the premises, and of one dollar to him in hand paid by the party of the second part, whereof he hereby confesses the receipt, the party of the first part hath bargained, sold, assigned, transferred, set over, granted and conveyed, and by these presents doth bargain, sell, assign, transfer, set over, grant and convey unto the party of the second part all of the property and estate of the party of the first part, both real and personal, wherever situate, and of every kind and character whatsoever, lands, tenements, hereditaments,

goods, chattels, credits and things in action, whether
legal or equitable, excepting only such property as is
exempted by law from forced sale, to have and hold the
same, and each and every part thereof unto the party
of the second part, in trust, nevertheless, to and for
the uses and purposes following, to-wit: to ask, de-
mand, receive, collect and recover, by law or otherwise,
in the same manner as party of the first part might or
could do in his own right if this assignment had not
been made, all debts owing to party of first part, to
dispose of all the property mentioned in this deed of
assignment to the best interests of all parties concerned,
either at public or private sale, as to him may seem best,
and convert the same into money, and to pay and ap-
ply the moneys received by him from such collections;
and the disposal of such property, plus the moneys of
first part on hand at the making of and transferred by
this assignment, in manner following, to-wit:   Firstly,
to pay the reasonable cost and expense of executing
this deed of assignment, and of carrying out the trust
thereby imposed upon him; secondly, if there be any
residue left of the moneys received by him as afore-
said after paying such cost and expense, then to pay
in full all the just debts of the party of the first part,
whether the same be due or not, and if such residue
shall not be sufficient to pay all such debts in full,
then to apply such residue in payment thereof ratably,
and in proportion to the several amounts thereof re-
spectively; thirdly, if after paying in full all the just
debts of party of first part there shall be left in the
hands of party of second part any residue of the
moneys collected and received by him as aforesaid,
then to pay in full the just debts of the copartnership
firm known as the St. Johns County Savings Bank,
which shall remain unpaid at the time when such resi-

due shall be ascertained, or if such residue shall not be sufficient to pay such debts in full, then to apply such residue in payment thereof ratably in proportion to the several amounts thereof respectively; fourthly, if after paying in full all the matters hereinbefore provided to be paid, there shall be left in the hands of the party of the second part any residue of the moneys so collected and received by him as aforesaid, then to pay such residue over to the party of the first part, his heirs, executors or assigns. And to enable the party of the second part the more effectually to carry out the trust herein and hereby created, the party of the first part, hereby makes, constitutes and appoints the party of the second part his true and lawful attorney, in his name, place and stead, or otherwise, as may be proper, to sign, seal, execute and deliver any and all instruments in writing, necessary or proper in the execution of said trust, and to do any and all other acts necessary in the premises to the proper and lawful carrying out of said trust; provided, nevertheless, that nothing herein contained shall direct or require the party of the second part to collect the debts owing to first party, or to dispose of his property as hereinbefore prescribed, until the provisions contained in sections one (1) to six (6) inclusive, of Chapter 3891 of the laws of Florida, have been complied with. In consideration of the premises, the party of the second part accepts the assignment herein made, and the trust herein imposed upon him, and covenants and agrees that he will faithfully discharge the duties of assignee herein devolved upon him, to the best of his ability. And the party of the first part has hereunto annexed a schedule of all property belonging to him at the date hereof, not exempt by law from forced sale, as also of what he claimed to be so exempt, and having signed

the same, makes it—marked "Exhibit A"—a part
hereof. In witness whereof the parties have hereunto
set their hands and seals the day and year first above-
written.

C. F. HOPKINS, JR., Seal.
GEORGE A. CROCKER, Seal.

Signed, sealed and delivered in presence of us,
and we certify "all debts owing to party of
first part," line 20, page 2, before executing.

J. W. ALLEN,
D. L. DUNHAM.

STATE OF FLORIDA, } ss.
ST. JOHNS COUNTY. }

On this 8th day of November, A. D. 1890, before me
personally came Charles F. Hopkins, Jr., and George
A. Crocker, to me well known to be the same persons
described in and who executed the foregoing assign-
ment, and duly and severally acknowledged that they
executed the same. Witness my hand and official seal
the day and year last above written.

J. W. ALLEN,
Seal.                                  Clk. Cir. Ct.

Ex. A.

Schedule of property of Charles F. Hopkins, referred
to in the annexed assignment, so far as the same can
be ascertained.
118 acres of land in St. John's county, in range
29 east, the title to which stands in my wife's
name, but of which I am the equitable owner,
and which I am to convey to my said assignee
by deed from self and wife, value...........$250.00
Dated November 8th, 1890.
40 acres of the above 118 acres is situate in town-
ship 7, S. R. 29 E.

40 acres in T. 5, S. R. 27 E., and
38 acres in T. 7, S. R. 28 E.

C. F. HOPKINS, JR.

EXHIBIT C.

GEORGE W. GIBBS
to            } Assignment.
'GEORGE A. CROCKER.

This indenture made this 8th day of November, A.
D. 1890, by and between George W. Gibbs, of St. Johns
county, State of Florida, party of the first part, and
George A. Crocker, of the same county, party of the
second part. Witnesseth: That whereas the party of
the first part has become financially embarrassed and
unable to pay his debts in full or as they become due,
but is desirous of having his property applied to the
payment of his said debts ratably in proportion to the
several amounts thereof, and whereas said party of the
first part is also a member of the copartnership firm
known as the St. Johns County Savings Bank, which,
becoming likewise insolvent, has made an assignment
to said George A. Crocker for the benefit of creditors,
and it is probable that the copartnership assets will
not suffice to pay the firm debts in full, thus leaving a
deficiency for which any residue of first party's estate
left after paying his individual debts would be liable;
and first party is desirous of having any such residue
applied in liquidating any such deficiency: Now, in
consideration of the premises, and of one dollar to him
in hand paid by the party of the second part, whereof
he hereby confesses the receipt, the party of the first
part hath bargained, sold, assigned, transferred, set
over, granted and conveyed, and by these presents
doth bargain, sell, assign, transfer, set over, grant and
convey unto the party of the second part all the prop-
erty and estate of the party of the first part, both real

and personal, wherever situate, and of every kind and character whatsoever, lands, tenements, hereditaments, goods, chattels, credits and things in action, whether legal or equitable, excepting only such property as is exempted by law from forced sale; to have and hold the same, and each and every part thereof, unto the said party of the second part, in trust, nevertheless, to and for the uses and purposes following, to wit: to ask, demand, receive, collect and recover, by law or otherwise, in the same manner as party of the first part might or could do in his own right if this assignment had not been made, all debts owing to party of first part, to dispose of all the property mentioned in this deed of assignment, to the best interests of all parties concerned, either at public or private sale, as to him may seem best, and convert the same into money, and to pay and apply the moneys received by him from such collections and the disposal of such property, plus the moneys of first party on hand at the making of deed transferred by this deed of assignment in manner following, to-wit: firstly, to pay the reasonable, proper and lawful cost and expense of executing this deed of assignment and carrying out the trust thereby imposed upon him; secondly, if there be any residue left of the moneys received by him as aforesaid after paying such cost and expense, then to pay in full all the just debts of the party of the first part, whether the same be due or not, and if such residue shall not be sufficient to pay all such debts in full, then to apply such residue in payment thereof ratably and in proportion to the several amounts thereof respectively; thirdly, if after paying in full all the just debts of the party of the first part, there shall be left in the hands of party of second part any residue of the moneys collected and received by him as aforesaid, then to pay in full the

just debts of the copartnership firm known as the St.
Johns County Savings Bank, which shall remain unpaid
at the time when such residue shall be ascertained,
or if such residue shall not be sufficient to pay such
debts in full, then to apply such residue in payment
thereof ratably in proportion to the several amounts
thereof respectively; fourthly, if after paying in full
all the matters hereinbefore provided to be paid, there
shall be left in the hands of the party of the second
part any residue of the moneys so collected and re-
ceived by him as aforesaid, then to pay such residue
over to the party of the first part, his heirs, executors
or assigns. And to enable the party of the second
part the more effectually to carry out the trust herein
and hereby created, the party of the first part hereby
makes, constitutes and appoints the party of the
second part his true and lawful attorney, in his name,
place and stead, or otherwise, as may be proper, to
sign, seal, execute and deliver any and all instruments
in writing necessary or proper in the execution of said
trust; and to do any and all other acts necessary in the
premises to the proper and lawful carrying out of said
trust; provided, nevertheless, that nothing herein con-
tained, shall direct or require the party of the second
part to collect the debts owing to first party or to dis-
pose of his property as hereinbefore prescribed until
the provisions contained in sections one (1) to six (6)
inclusive, of Chapter 3891 of the laws of Florida, have
been complied with. In consideration of the premises,
the party of the second part accepts the assignment
herein made and the trust herein imposed upon him,
and covenants and agrees that he will faithfully dis-
charge the duties of assignee herein devolved upon
him to the best of his ability. And the party of the
first part has hereunto annexed a schedule of all prop-

erty belonging to him at the date hereof, not exempt by law from a forced sale, as also what he claims to be so exempt, and, having signed the same, makes it— marked Ex. "A"—a part hereof. In witness whereof the parties have hereunto set their hands and seals the day and year first above written.

GEORGE W. GIBBS, [Seal.]
GEORGE A. CROCKER, [Seal.]

Signed, sealed and delivered in
presence of us, and we certify
"to the proper and lawfully
carrying out of said trust,"
interlined page 4, line 20, be-
fore execution.

J. W. ALLEN, Clk. Cir. Ct.
D. L. DUNHAM.

STATE OF FLORIDA, }
ST. JOHNS COUNTY. }

On this 8th day of November, A. D. 1890, before me personally came George W. Gibbs and George A. Crocker, to me well known to be the same persons described in and who executed the foregoing assignment, and duly and severally acknowledged that they executed the same. Witness my hand and official seal the day and year last above written.

J. W. ALLEN,
Seal.                                    Clk. Cir. Ct.

Ex. "A."

Schedule of property of George W. Gibbs, as
nearly as the same can now be ascertained,
referred to in the annexed assignment.
About 580 acres of land in T. 4, South of
Range 29 E., in the State of Florida, known
as the "Diego Tract," the title of which

stands in my wife's name, but of which I am
the equitable owner, and which I am to trans-
fer to my said assignee by deed from self
and wife, value ......................... $12,000.00
Mortgaged to Bank of Jacksonville for.... 7,000.00

Value of equity of redemption (estimated)... $5,000.00
Dated November 8th, 1890.

GEORGE W. GIBBS.

The court upon this statement of facts rendered
judgment in favor of the garnishee, dismissing him
without day, and awarding him a recovery of costs.
From this judgment the plaintiffs have appealed here.

The error assigned is, that the judgment is contrary
to law and the evidence. The practice seems to be
well established that the validity of a deed of assign-
ment, made for the benefit of creditors, and alleged to
be fraudulent or void, may be tried in a court of law,
upon an issue made between a creditor and the
assignee summoned as garnishee, under the provisions
of law relating to garnishments. Lee vs. Tabor, 8
Mo. 322; Moss vs. Humphrey, 4 G. Greene (Iowa) 443;
Dawson vs. Coffey, 12 Oregon, 513; National Park
Bank vs. Lanahan, 60 Md. 477; May vs. Walker, 35
Minn. 194, 28 N. W. Rep. 252; Hardcastle vs. Fisher,
24 Mo. 70; Bishop, Smith & Co. vs. Trustees of Hart,
28 Vt. 71; Keep vs. Sanderson, 2 Wis. 42, S. C. 60
Am. Dec. 404. And these authorities maintain that
in the trial of such issue if the assignment is found to
be fraudulent, void or ineffectual, the garnisheeing
creditor should recover against the assignee the amount
found in his hands under such void assigment at the
time of the service of the writ up to the extent of the
creditor's claim.

It is contended for the appellant plaintiffs that the deed of assignment here made by the partnership firm composed of Gibbs, Hopkins and Livingston is void upon its face for the following reasons: (1) Because it is a *partial* assignment only; that it undertakes and purports only to convey to the assignee for the benefit of the creditors of the firm the *partnership* property, and, on its face, does not assign or carry to the assignee any property that may be owned individually by the members of the firm. (2) Because it makes no provision for the payment of any individual debts that may be owing by the members of the firm; but provides, to the exclusion of any creditors of the individual members of the firm, that after the partnership debts shall be paid, any balance remaining in the hands of the assignee shall then revert to and be paid over to the members of the firm in equal proportion. (3) Because the deed of assignment is not verified by the assignors in accordance with the provisions of our assignment statute, Chapter 3891 laws, approved May 31st, 1889, in force at the time this assignment was made. It is further contended for the appellants that the two deeds of assignment, referred to as exhibits B and C, made by Gibbs and Hopkins, members of the firm, of their individual property, do not cure the defects of the assignment by the firm, and are void upon their face, (1) because they are not verified in compliance with the said assignment law; (2) because only two members of the firm assign their individual property, leaving the other member, Livingston, still in possession and control of any property he may individually own; and (3) because the deed of assignment by the firm provides for the return to the assignors of any surplus of the firm's assets after the payment of the firm's debts, to the exclusion of the creditors of the individ-

ual members of the firm, and these two assignments by the members of the firm make no provision for the distribution of that surplus, if any such there shall be, among the creditors of the individuals composing that firm; and (4) because the assignment by the firm, and those made by its members, Gibbs and Hopkins, were not made at the same time, but had several days to intervene between the making thereof.

Before proceeding to the discussion of the questions raised we deem it proper to say that the grounds or reasons upon which the ruling of the court below was based are not stated or disclosed by the record before us, and that no submission of the cause, by brief or otherwise, has been made here on behalf of the appellee; our consideration of the case must, therefore, be confined to a decision of the question as raised and presented by the counsel for the appellant upon the record before us, without considering the case in any other aspect than that in which it is presented. Kennedy vs. McKee, 142 U. S. 606, 35 Lawyers' Ed. 1131, 12 Sup. Ct. 303.

The provisions of the assignment law, Chapter 3891, acts of 1889, that bear upon the questions raised as to the validity of the deeds of assignment here are as follows: "Section 1. That no assignment made for the benefit of creditors shall be valid in this State except the same shall be in writing and shall provide for an equal distribution of all the assignor's real, mixed and personal property, except such as is exempted by law from forced sale, among the several creditors of the said assignor, in equal proportion, according to their respective demands. Sec. 2. That the said assignor shall make and subscribe an oath in writing before any officer authorized to administer oaths, of the county in which he lives and does business, or of the

county or counties wherein is situated the property assigned, not more than ten days after said assignment, that he has placed or assigned, and the true intention of his assignment was to place in the hands of his assignee, all of his property of every description, except such as is exempt by law from forced sale, to be divided among his creditors in proportion to their respective demands. Sec. 3. That both the said deed of assignment and oath of assignor shall be recorded in the office or offices of the clerk or clerks of the county or counties in which the property that is assigned is situated. * * Sec. 5. That any assignor who shall swear falsely when he makes the oath required in section 2 of this act shall be deemed guilty of perjury, and upon conviction thereof shall be imprisoned in the State penitentiary not exceeding twenty years." It will be observed that none of the deeds of assignment here were accompanied by the oath of the assignors, provided for in section 2 of the above act. This alone, we think, vitiated the deeds and rendered them all inoperative and void as to creditors. Such provisions in laws of this character have quite uniformly been held to be, not directory merely, but mandatory, and vitiative of the assignment, when not complied with. Hill, Fontaine & Co. vs. Alexander Bros., 16 Lea (Tenn.) 496; Coggins vs. Stephens & Co., 73 Ga. 414; Mather vs. McMillan, 60 Wis. 546, 19 N. W. Rep. 440; Jaffray vs. McGehee, 107 U. S. 361, 2 Sup. Ct. Rep. 367. That the provision of this act requiring this oath to be made by the assignor was intended by the Legislature to be *mandatory*, and not directory, to be complied with or not at the will and pleasure of the assignor, we think is evident from the provisions of the act quoted. Not only is one entire section of the act devoted to a prescription of the oath and what its contents shall be,

and an express limit of time within which it shall be made, but another section (3) further dwells upon its importance by providing that such oath shall be perpetuated of record along with the deed of which it speaks; and still another section (5) is exclusively devoted to prescribing a special penalty for false swearing in taking such oath. It was also, we think, the evident purpose of this act to prohibit *partial* assignments for the benefit of creditors in this State, and to prohibit therein the *preferment* of one creditor over another. The plain and emphatic language of section one of the act, declaring in express terms "that no assignment made for the benefit of creditors shall be valid in this State except the same shall be in writing and shall provide for an equal distribution of *all* the assignor's real, mixed and personal property, * * in equal proportion, according to their respective demands," coupled with the specific requirement of the oath by the assignor, " that he has placed or assigned, and the true intention of his assignment was to place in the hands of his assignee, *all of his property of every description,*" will permit of no other construction. The assignment executed here by the partnership firm does not purport to convey to the assignee anything more than the partnership property, and in express terms confines itself to partnership property, and is fatally obnoxious to our statute, in that it excludes the creditors of the individual members of the firm from any participation in the partnership property even after partnership debts have been satisfied in full. Where a deed of assignment made by a firm of copartners for the benefit of their creditors conveys to the assignee nothing but the joint property of the firm, without including also the property of the individuals composing the

firm, the authorities are quite uniform that such assignments are *partial assignments* only, and void where the statute requires a conveyance of *all* the debtor's property. Thomas vs. Jenks, 5 Rawle (Pa.), 221; Seaving vs. Brinkerhoff, 5 Johnson's Chy. 329; Sangston vs. Gaither, 3 Md. 40; Citizens Fire, M. & L. Ins. Co. vs. Wallis and Thomas, 23 Md. 173; Probst & Hilb vs. Welden, 46 Ark. 405; Henderson vs. Bliss, 8 Ind. 100; *In re* Allen, 41 Minn. 430, 43 N. W. Rep. 382; May vs. Walker, 35 Minn. 194, 28 N. W. Rep. 252; Still vs. Focke & Wilkins, 66 Texas, 715, 2 S. W. Rep. 59; Donoho vs. Fish Bros. & Co., 58 Texas, 164; Kennedy vs. McKee, 142 U. S. 606, 12 Sup. Ct. Rep. 303, 35 Lawyers' Ed. 1131. The reasons urged against the assignments here are all of them well taken. It did not comply with the provisions of our statute by including therein *all* of the property of the assignors, both partnership and individual, and was not verified by the oaths of the assignors, as the statute required, and it was therefore inoperative and void as to the creditors, and did not put the property of the assignors beyond the reach of creditors by such remedies as were open to them in the courts. The judgment, upon the facts disclosed by the record, should have been against the garnishee, and in favor of the appellants.

The judgment appealed from is reversed and a new trial ordered.